IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CV-43-D

| | |
|---|---|
| VANESSA BEASLEY, on behalf of herself, )<br>and all others similarly situated, )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>SESSOMS & ROGERS, P.A., )<br>LEE C. ROGERS, and )<br>PALISADES COLLECTION, LLC, )<br> )<br>Defendants ) | **ORDER** |

Plaintiff Vanessa Beasley ("plaintiff"or "Beasley") succeeded on two out of five claims in a straightforward action under the Fair Debt Collections Practice Act against defendants Sessoms & Rogers, P.A., Lee C. Rogers, and Palisades Collection, LLC (collectively "defendants"). During the litigation, plaintiff demanded over $500,000 to settle the case. Ultimately, defendants consented to class certification, and plaintiff (on behalf of the class) accepted an offer of judgment in the amount of $1,001.00 for herself and $9,000.00 for the class. Beasley now seeks $93,592.50 in attorney's fees and $909.40 in costs [D.E. 82]. Defendants oppose the motion. As explained below, the court awards $25,000.00 in attorney's fees and $380.00 in costs.

I.

On February 2, 2009, Beasley sued Sessoms & Rogers, P.A., Lee C. Rogers, and Palisades Collection, LLC, ("Palisades") alleging a violation of the Fair Debt Collections Practices Act ("FDCPA") [D.E. 1]. In her complaint, Beasley alleged that defendants sent her a letter that violated the FDCPA by (1) "using false, deceptive, or misleading representations or means in connection with the collection of any debt in violation of 15 U.S.C. § 1692e and e(10)"; (2) "requiring consumers who dispute their alleged debts to advise Defendants of 'the nature' of their disputes in violation of

15 U.S.C. § 1692g(a)"; (3) "failing to state the amount of the debt in violation of 15 U.S.C. § 1692g(a)(1)"; (4) "failing to inform consumers that their request for verification of the alleged debts must be 'in writing' in violation of 15 U.S.C. § 1692g(a)(4)"; and (5) "failing to inform consumers that, for the purposes of requesting verification, they are permitted to dispute 'any portion' of their alleged debts, in violation of 15 U.S.C. § 1692g(a)(4)." Compl. [D.E. 1] ¶ 65(A)–(E). Beasley also sought certification as a class on behalf of all persons in North Carolina who were sent a similar debt collection letter. See id. ¶¶ 55–63.

On June 19, 2009, defendants moved to dismiss Beasley's complaint for failure to state a claim [D.E. 27], which Beasley opposed [D.E. 31]. On March 1, 2010, the court granted defendants' motion to dismiss Beasley's first, third, and fifth claims, but allowed Beasley to proceed with her second and fourth claims [D.E. 52].

On July 9, 2010, following discovery, Beasley moved for class certification and indicated that defendants consented to the certification. Pl.'s Mot. Class Cert. [D.E. 55] ¶ 12; see also Defs.' Resp. Pl.'s Mot. Class Cert. [D.E. 62]. On August 16, 2010, before the court ruled on Beasley's motion for class certification, defendants served Beasley with an offer of judgment in the amount of $1,001.00 for Beasley, $9,000.00 for the class, reasonable and allowable costs, and reasonable attorney's fees [D.E. 65-1]. Beasley accepted the offer of judgment, and on October 18, 2010, the parties filed a Joint Motion for Class Certification and Preliminary Approval of Accepted Offer of Judgment [D.E. 67] and a Joint Motion for Approval of Cy Pres Award and Designation of Cy Pres Recipients [D.E. 68]. On December 6, 2010, the court granted class certification and preliminary approval of the offer of judgment [D.E. 70], and the court granted the joint motion regarding Cy Pres the following day [D.E. 72]. On December 30, 2010, Beasley sent the notice of the Accepted Offer of Judgment to 1,341 class members [D.E. 76-1].

On March 18, 2011, the court granted final approval of the Accepted Offer of Judgment [D.E. 78] and entered a Class Action Judgment in favor of Beasley and the class that she represents against

2

defendants [D.E. 79]. On May 16, 2011, Beasley filed a Motion for Award of Costs and Attorney's Fees pursuant to 15 U.S.C. § 1692k(a)(3) and requested $93,592.50 in attorney's fees and $909.40 in costs [D.E. 82]. On June 9, 2011, defendants responded in opposition [D.E. 93] and filed declarations and exhibits in support [D.E. 94, 95]. On August 11, 2011, Beasley filed a reply and included the declaration of her attorney Angela O. Martin ("Martin") [D.E. 101, 102]. On August 18, 2011, Beasley filed the supplemental declaration of her attorney Craig M. Shapiro ("Shapiro"), in which Shapiro asked for an additional $8,760.00 in fees [D.E. 104]. On August 21, 2011, defendants filed an objection to Shaprio's supplemental declaration [D.E. 105].

II.

Section 1692k allows a plaintiff "in the case of any successful action" under the FDCPA to recover "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). The FDCPA provides for an award of a reasonable attorney's fee "in all but the most unusual circumstances," and the determination of a "reasonable attorney's fee" is within the sound discretion of the district court. See, e.g., Carroll v. Wolpoff & Abramson, 53 F.3d 626, 628–29 (4th Cir. 1995).

In determining an award of a reasonable attorney's fee, a district court first must calculate the "lodestar" amount (a reasonable hourly rate multiplied by hours reasonably expended). See, e.g., Grissom v. Mills Corp., 549 F.3d 313, 320–21 (4th Cir. 2008); Carroll, 53 F.3d at 628–29. The lodestar figure "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

After calculating the lodestar figure, a district court should then exclude from the lodestar figure hours spent on unsuccessful claims that were unrelated to the successful claims. See Hensley, 461 U.S. at 435; Grissom, 549 F.3d at 321; Johnson v. City of Aiken, 278 F.3d 333, 337 (4th Cir. 2002). In many cases, much of counsel's time "will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis," and the district court

3

therefore may focus "on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Hensley, 461 U.S. at 435. The court may "attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." Id. at 436–37. "The court necessarily has discretion in making this equitable judgment." Id. at 437.

The court then applies the Johnson/Barber factors. See Hensley, 461 U.S. at 433–34 & n.9 (explaining lodestar calculations and approving the twelve-factor test set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974), overruled on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989)); Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting Johnson's twelve-factor test).

The Johnson/Barber factors include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Grissom, 549 F.3d at 321 (quotation omitted). Although the Johnson/Barber factors often are subsumed in the district court's determination of the lodestar figure, the court may also consider these factors in evaluating whether the lodestar figure is reasonable. Hensley, 461 U.S. at 434 n.9. However, a court need not list each Johnson/Barber factor or comment on those factors that do not apply. See, e.g., Bergstrom v. Dalkon Shield Claimants Trust (In re A.H. Robins Co.), 86 F.3d 364, 376 (4th Cir. 1996).

Here, defendants first argue that Beasley should not be awarded any attorney's fee due to plaintiff's bad faith in compiling the billable hours. See Defs.' Mem. Opp. Mot. Fees [D.E. 93] at 10–12. Assuming without deciding that the court has discretion to decline to award attorney's fees

4

for such bad faith, the record reflects sloppy recordkeeping and excessive billing, but not bad faith. Accordingly, the court rejects defendants' argument and will award reasonable attorney's fees.

In determining the fee award, the court notes its familiarity with the claims and record in this case. Cf. Carroll, 53 F.3d at 628 (explaining that the district court has a "ringside view of the relevant conduct of the parties and the underlying legal dispute" (quotation omitted)). Beasley's claims in this case involved rudimentary application of the FDCPA to a single debt collection letter. Moreover, the litigation did not present novel or complex legal issues. In fact, at times, plaintiff's counsel was able to recycle, verbatim, arguments used in prior cases. E.g., compare Pl.'s Mem. Supp. Mot. Dism. Counterclaim [D.E. 18] at 12–14, with Defs.' Mem. Opp. Mot. Fees Ex. 1 (Pl.'s Mem. Supp. Mot. Dism. Counterclaim at 6–9, Evans v. Am. Credit Sys., Inc., No. 8:02-CV-472 (D. Neb. Nov. 10, 2003)). Beasley's case was a class action, but applying Federal Rule of Civil Procedure 23(a) in this case was straightforward, class certification was largely uncontested, and plaintiff's counsel apparently had the benefit of leveraging preexisting work product. Compare Pl.'s Mem. Supp. Mot. Class Cert. [D.E. 56], with Defs.' Mem. Opp. Mot. Fees Ex. 2 at 5–17 (Pl.'s Mem. Sup. Mot. Class Cert., Outten v. Capital Mgmt. Servs., LP, No. 1:09-CV-22152 (S.D. Fl. Jan. 7, 2010)). In sum, the class certification negligibly impacted the work reasonably required in this routine case. In addition, although plaintiff initially demanded over $500,000 to settle the case, the case was resolved for a fraction of that amount. See Defs.' Mem. Opp. Mot. Fees 3.

Beasley requests $93,592.50 in attorney's fees and $909.40 in litigation-related expenses. See Mot. Fees ¶¶ 30–44. In making this request, Beasley calculated a lodestar figure of $93,592.50 by multiplying the respective hourly rate of her three attorneys by each attorney's respective billed hours. See id. Martin dedicated 112.2 hours to the case, but only charged plaintiff for 106.7 hours at her hourly rate of $225, yielding a request of $24,007.50. Id. ¶¶ 31–33. Shapiro dedicated 226 hours to the case, but only charged plaintiff for 220.4 hours at his hourly rate of $300, yielding a request of $66,210.00. Id. ¶¶ 35, 37. O. Randolph Bragg dedicated 8 hours to the case, but only

5

charged plaintiff for 7.7 hours, at his hourly rate of $450, yielding a request of $3,465.00. Id. ¶¶ 39, 41. In addition, Martin and Shapiro incurred expenses of $380.00 and $529.40, respectively. Id. ¶¶ 34, 38.

Initially, the court calculates the lodestar. See, e.g., Hensley, 461 U.S. at 435–37; Grissom, 549 F.3d 320–21. In doing so, the court rejects Shapiro's proposed rate of $300 per hour. Notably, earlier this year Shapiro's former law firm colleague Bragg submitted an affidavit in another federal case stating that Shapiro's reasonable hourly rate is $225 per hour. See Defs.' Mem. Opp. Mot. Fees Ex. 6 (Bragg Decl. ¶ 15, Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, No. 1:06-CV-01397-PAG (N.D. Ohio May 3, 2011)). The $225 rate for Shapiro also aligns with Martin's hourly rate. See Mot. Fees ¶ 32. The court finds that $225 is Shapiro's reasonable hourly rate. Thus, in calculating the lodestar, the court uses a $225 hourly rate for Shapiro. Similarly, the court has reviewed the evidence associated with Bragg's request for $450 per hour. After reviewing the record in this case and considering the reasonable hourly rate within the Eastern District of North Carolina, the court rejects the notion that $450 per hour is reasonable for Bragg's work in the Eastern District of North Carolina. Cf. Grissom, 549 F.3d 321–23. Instead, the court finds that Bragg's reasonable hourly rate is $350 per hour. Thus, in calculating the lodestar, the court uses a $350 hourly rate for Bragg. The court also rejects the additional $8,760.00 in fees that Shapiro seeks in his supplemental declaration [D.E. 104]. The requested fees are unreasonable. See [D.E. 105]. The court also has reviewed the time entries for Shapiro and Martin and finds that the time requested is grossly excessive in that many entries are vague, reflect clerical tasks, or reflect a complete absence of billing judgment. Accordingly, the court reduces Shapiro's and Martin's hours by fifty percent and calculates the lodestar to be $39,493.75 (i.e., Bragg [7.7 hours multiplied by $350], Shapiro [110.2 hours multiplied by $225], and Martin [53.35 hours multiplied by $225]).

Having calculated the lodestar figure, the court next subtracts "'fees for hours spent on unsuccessful claims unrelated to successful ones.'" Grissom, 549 F.3d at 321 (quoting City of

6

Aiken, 278 F.3d at 337). Although strict proportionality between attorney's fees and the amount of plaintiff's recovered damages is not required, see Yohay v. City of Alexandria Emps. Credit Union, Inc., 827 F.2d 967, 974 (4th Cir. 1987), the court is to award "some percentage of the [requested attorney's fees], depending on the degree of success enjoyed by the plaintiff." City of Aiken, 278 F.3d at 337. Plaintiff's counsel was successful on two of the five claims,[1] cf. Carroll, 53 F.3d at 630, and defendants "should not have to shoulder the entire financial burden occasioned by [plaintiff's counsel's] failure to make a reasonable assessment of the value of [the] case." Altergott v. Modern Collection Techniques, Inc., 864 F. Supp. 778, 783 (N.D. Ill. 1994).

If the court applied a mechanical proportionality, the court would reduce the lodestar figure from $39,493.75 to $15,797.50. After all, Beasley succeeded on only two out of her five claims. Nonetheless, the court has reviewed the billing records and considered the claims on which Beasley succeeded. The records do not permit the court to neatly separate the successful claims from the unsuccessful claims. However, the court concludes that counsel spent thirty-five percent of their time on unsuccessful claims. Thus, the court reduces the lodestar figure from $39,493.75 to $25,670.94.

Next, the court addresses the relevant Johnson/Barber factors. In light of the degree of success obtained, the straightforward nature of the FDCPA claims, defendants' conduct during the litigation (including consenting to class certification and making an offer of judgment), counsel's ability to recycle preexisting work product, the requisite skill required for this case, the amount in controversy, the results obtained, the undesirability of the case within the legal community, and the nature and length of the professional relationship, an award of $25,670.94 is excessive. A reduction to an attorney's fee award of $25,000.00 is reasonable. This reduction is appropriate in light of the relevant Johnson/Barber factors, particularly the degree of success obtained, the straightforward

---

[1] Defendants repeatedly refer to plaintiff having lost "four of six" claims, see, e.g., Defs.' Mem. Opp. Mot. Fees 1, 8, 27, but plaintiff's complaint contained five claims and this court dismissed three of them.

7

nature of the case, the amount in controversy, the results obtained, and the skill required. Thus, the court awards plaintiff a reasonable attorney's fee in the amount of $25,000.00.

As for the other costs, Shapiro requests $529.40 for a round-trip flight between Chicago and Raleigh on March 18, 2011. Shapiro made the flight in order to attend (along with co-counsel Martin) the hearing at which the court granted final approval to resolve this case, and Shapiro incurred the expense after the date of the offer of judgment. Nonetheless, Shapiro argues that he incurred airfare due to this court's rule prohibiting telephonic appearances, and therefore seeks to recover $529.40.

Defendants oppose the request and argue that the Order Granting Final Approval of the Offer of Judgment, entered March 18, 2011, states that defendants were to pay "costs accrued as of the date of the offer" [D.E. 78], and the offer was made on August 16, 2010. Mot. Fees ¶ 19. As such, Shapiro's request for an expense incurred in March 2011 conflicts with the offer of judgment.

The court agrees with defendants. Accordingly, the court declines to award the $529.40 that Shapiro seeks. The court does, however, award the $380.00 in costs that Martin seeks.

III.

In sum, plaintiff's motion for attorney's fees and costs [D.E. 82] is GRANTED in part. Defendants shall pay $25,000.00 in reasonable attorney's fees and $380.00 in costs.

SO ORDERED. This 8 day of November 2011.

JAMES C. DEVER III
Chief United States District Judge